McDERMOTT, Exr., Appellant and Cross–Appellee,

v.

TWEEL, Appellee and Cross–Appellant;  VerMeulen, Appellee.

[Cite as *McDermott v. Tweel,* 151 Ohio App.3d 763, 2003-Ohio-885.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–784.

Decided Feb. 27, 2003.

764

Jack E. McCormick, Leigh–Ann M. Sims and Nicole D. McCormick, for appellant.

Hanna, Campbell & Powell and James M. Lyons, for appellee Charles Tweel, M.D.

Reminger & Reminger and Elisabeth Gentile, for appellee Victor VerMeulen, M.D.

McCormac, Judge.

{¶ 1}　Plaintiff-appellant, Ruth A. McDermott, as the executor of the estate of her late husband, Joseph R. McDermott ("decedent"), appeals from awards of summary judgment granted by the Franklin County Court of Common Pleas in favor of defendants-appellees, Charles Tweel, M.D., and Victor VerMeulen, M.D. Dr. Tweel cross-appeals from the trial court's denial of his motion for partial summary judgment.

{¶ 2}　In October 1996, decedent presented to his long-time family physician, Dr. Tweel, complaining of a sore throat and hoarseness. Dr. Tweel observed that decedent had some inflammation of his right vocal chord and prescribed an antihistamine. Decedent saw Dr. Tweel again for hoarseness in May, July, and August 1997. Following the August visit, Dr. Tweel referred decedent to Dr. VerMeulen, an otorhinolaryngolgist, or "ENT."

{¶ 3}　Dr. VerMeulen first saw decedent in August 1997, and immediately diagnosed stage one cancer of the larynx. On Dr. VerMeulen's recommendation, decedent underwent a series of radiation treatments for his cancer from August 13, 1997, through November 7, 1997. Thereafter, decedent saw Dr. VerMeulen for post-radiation followup visits in November 1997 and January 1998. At both of these visits, Dr. VerMeulen indicated that the radiation therapy had been successful and that decedent was cancer-free. Dr. VerMeulen did not see decedent again until March 1999, when decedent presented with continuing hoarseness and a weak voice. As a result of this visit, it was discovered that decedent's cancer had recurred. In July 1999, decedent underwent a complete laryngectomy, followed up by radiation treatment. By this time, however, decedent's cancer had become aggressive and the treatment proved unsuccessful. Ultimately, the cancer caused decedent's death on November 15, 1999.

{¶ 4}　On December 3, 1999, plaintiff filed a complaint containing wrongful-death and survivorship claims in the Franklin County Court of Common Pleas. Plaintiff's complaint alleged that Dr. Tweel had committed medical malpractice by failing to refer decedent to an ENT when he first complained of hoarseness in October 1996. On February 29, 2000, plaintiff's co-counsel interviewed Dr.

VerMeulen at his office regarding decedent's treatment by Dr. Tweel. On October 5, 2000, plaintiff filed an amended complaint adding Dr. VerMeulen as a defendant and alleging that Dr. VerMeulen committed malpractice by failing to provide decedent with proper followup care after his first series of radiation treatments.

{¶ 5} On June 26, 2001, plaintiff filed a motion requesting leave to file a second amended complaint adding Lori R. Davis, an employee of Dr. VerMeulen's office, as a party and adding a claim for fraud, alleging that certain medical and billing records provided by Dr. VerMeulen during discovery had been altered. The trial court denied plaintiff's motion for leave to amend on September 21, 2001.

{¶ 6} On July 23, 2001, Dr. Tweel filed a motion in limine seeking to exclude the testimony of plaintiff's counsel regarding their February 29, 2000 interview of Dr. VerMeulen. On August 13, 2001, Dr. Tweel filed a motion for partial summary judgment arguing that plaintiff's survivorship claim against him was time-barred for having been filed outside the applicable statute of limitations. On August 14, 2001, plaintiff filed a memorandum contra Dr. Tweel's motion for partial summary judgment in which he argued that Dr. Tweel's statute of limitations argument was "wholly frivolous" and requested that the trial court impose sanctions against Dr. Tweel, pursuant to R.C. 2323.51 and Civ.R. 11, in the amount of $300,000. On November 15, 2001, the trial court issued a decision granting Dr. Tweel's motions in limine and for partial summary judgment and denying plaintiff's request for sanctions.

{¶ 7} On November 13, 2001, Dr. VerMeulen filed a motion seeking a continuance of the trial, then scheduled for December 3, 2001, on the grounds that complications with his lead counsel's pregnancy would make it impossible for her to participate in a December trial. On November 16, 2001, plaintiff filed a motion requesting that the trial court reconsider its decision granting Dr. Tweel summary judgment on plaintiff's survivorship claim. By an entry dated November 21, 2001, the trial court granted Dr. VerMeulen's request for a continuance and rescheduled the trial for March 25, 2002. On March 19, 2002, the trial court issued a decision granting plaintiff's motion to reconsider its grant of partial summary judgment for Dr. Tweel.

{¶ 8} When the parties appeared for trial on March 25, 2002, they were referred to a visiting judge, as the original trial judge was engaged in matters related to his criminal docket. However, when plaintiff informed the visiting judge that he thought that the trial would last two weeks, the visiting judge informed the parties that he would be unable to try the case, as he was scheduled to sit for only one week. Thereafter, plaintiff's counsel left the courthouse. According to an April 10, 2002 entry prepared by the trial court, since the case

now reverted back to the original judge, counsel for the defense appeared before him late in the afternoon of March 25, 2002, to seek directions regarding how to proceed given the visiting judge's inability to try the case. The trial court's entry indicates that defense counsel was told that the court would reschedule the trial for July 1, 2002, although it would be willing to move the trial date again if July 1, 2002, was unacceptable to plaintiff. In addition, the trial court extended the cutoff date for all motions to May 3, 2002.

{¶ 9} On April 24, 2002, plaintiff filed a motion for partial summary judgment on the issue of liability pertaining to her claims against Dr. Tweel. On April 26, and May 3, 2002, respectively, Drs. Tweel and VerMeulen moved for summary judgment on plaintiff's claims against them. On June 28, 2002, the trial court issued a decision denying plaintiff's motion for partial summary judgment but granting Drs. Tweel's and VerMeulen's motions for summary judgment. The trial court subsequently filed a judgment entry granting final judgment to Drs. Tweel and VerMeulen, and dismissing plaintiff's complaint for the reasons set forth in its June 28, 2002 decision. Plaintiff appeals from the trial court's decision and entry assigning the following errors:

{¶ 10} "1. The lower court's ex parte meeting with the defendant-appellees attorneys on March 25, 2002 was improper, causing prejudice to the plaintiff-appellant.

{¶ 11} "2. The lower court's ruling of September 20, 2001, overruling plaintiff's motion to amend its pleadings instanter was an abuse of discretion.

{¶ 12} "3. The lower court's decision entry sustaining the defendant-appellee's motion to exclude evidence rendered November 15, 2001, is contrary to law.

{¶ 13} "4. The lower court's granting of the defendant-appellee VerMeulen's motion for a continuance on November 16, 2001, was an abuse of discretion and prejudicial to the plaintiff-appellant.

{¶ 14} "5. The lower court's sustaining the defendant-appellee Charles Tweel's motion for summary judgment on June 28, 2002, was contrary to law.

{¶ 15} "6. The lower court's ruling of June 28, 2002, sustaining defendant-appellee VerMeulen's motion for summary judgment was contrary to law.

{¶ 16} "7. The lower court's overruling of the plaintiff-appellant's motion for partial summary judgment against defendant-appellee Tweel was contrary to law.

{¶ 17} "8. The lower court's overruling of sanctions against the defendant-appellee Tweel's attorney was an abuse of discretion."

{¶ 18} Dr. Tweel cross-appeals from the trial court's decision and entry assigning the following error:

{¶ 19} "Whether the trial court's March 19, 2002 judgment overruling appellee Tweel's partial motion for summary judgment on the basis of the statute of limitations, which had previously been granted, was contrary to law."

{¶ 20} In her first assignment of error, plaintiff contends that the trial court's meeting with defense counsel on the afternoon of March 25, 2002, after the visiting judge informed counsel for all parties that he would not be able to try the case, was an improper and prejudicial ex parte communication in violation of Canon 3(B) of the Ohio Code of Judicial Conduct. Canon 3(B) provides:

{¶ 21} "(7) A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding except:

{¶ 22} "(a) *Where circumstances require, ex parte communications for scheduling,* administrative *purposes,* or emergencies that do not address substantive matters or issues on the merits are permitted if the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication." (Emphasis added.)

{¶ 23} In the present case, the trial court's entry of April 10, 2002, plainly states that the only matters discussed during the ex parte meeting between it and defense counsel related to the scheduling of a new trial date and a cutoff date for the filing of motions. Further, the trial court explicitly indicated that it was willing to reschedule the trial date to accommodate plaintiff's schedule if necessary. Plaintiff does not suggest that substantive matters were discussed during the meeting but asserts that he was prejudiced by the trial court's decision to extend the time for filing motions without input from plaintiff's counsel, in that such extension allowed defendants to file the motions for summary judgment which ultimately led to the dismissal of her claims. The trial court's extension of the motions deadline applied to plaintiff as well as defendants and, in fact, plaintiff availed herself of the extension by filing a motion for partial summary judgment. The fact that the trial court's decision to extend the time for filing motions ultimately led to the dismissal of plaintiff's claims on the merits, while perhaps prejudicial to plaintiff in the broadest sense of the word, was not *unfairly* prejudicial.

{¶ 24} Plaintiff's first assignment of error is overruled.

{¶ 25} In her second assignment of error, plaintiff challenges the trial court's denial of her motion for leave to file a second amended complaint. As noted, plaintiff sought to amend her complaint to add an office employee of Dr. VerMeulen's as a defendant and to add a claim for fraud against the employee and Dr. VerMeulen. Specifically, plaintiff contended that certain documents that she had only recently received from Dr. VerMeulen gave rise to the new claims.

{¶ 26} The decision regarding whether to grant or deny a motion for leave to amend is within the discretion of the trial court. *Parahoo v. Mancini* (Apr. 14, 1998), Franklin App. No. 97APE08–1071, 1998 WL 180539. Accordingly, a trial court's ruling on a motion for leave to amend will not be disturbed on appeal absent a showing that the trial court abused its discretion. *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. An abuse of discretion connotes more than an error of judgment; it implies a decision that is without a reasonable basis and one that is clearly wrong. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. While it is true that Civ.R. 15 favors a liberal policy of allowing the amendment of pleading, Civ.R. 15(A) and *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 465 N.E.2d 377, modified on other grounds, *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 20, 688 N.E.2d 506, the Ohio Supreme Court has expressly held that, where a movant fails to make a prima facie showing that the amendment sought can be factually supported, the trial court acts within its discretion in denying the motion to amend. *Wilmington Steel,* supra, at syllabus.

{¶ 27} Here, the trial court denied plaintiff's motion for leave to amend on the basis that plaintiff had failed to present any evidence to support her claim for fraud. We agree. Plaintiff's memo in support of her motion for leave to amend was a mere two sentences long and simply asserted that newly received evidence gave rise to the fraud claim. Similarly, plaintiff's reply memorandum, although considerably more lengthy than her initial memorandum, provides no factual support for plaintiff's proposed fraud claim. Accordingly, we can conclude that the trial court did not abuse its discretion in denying plaintiff's motion to amend.

{¶ 28} Plaintiff's second assignment of error is overruled.

{¶ 29} In her third assignment of error, plaintiff challenges the trial court's granting of Dr. Tweel's motion in limine seeking to exclude the testimony of her counsel regarding their February 29, 2000 interview of Dr. VerMeulen. The trial court's grant of Dr. Tweel's motion in limine is not reviewable. A decision granting a motion in limine is a tentative, interlocutory, and precautionary ruling that reflects the trial court's anticipatory treatment of an evidentiary issue. *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 503 N.E.2d 142. Except in rare circumstances where a substantial right is affected, the granting of a motion in limine is not reviewable. Id. at 202, 28 OBR 285, 503 N.E.2d 142. Here, it cannot be argued that the trial court's preliminary ruling not to allow plaintiff's counsel to testify regarding her interview with Dr. VerMeulen affected any substantial right of plaintiff. The absence of any harm to plaintiff resulting from the granting of the motion in limine is particularly obvious given plaintiff's insistence that the disputed testimony was not being

offered to prove the truth of the matter asserted but to attack Dr. VerMeulen's credibility. Given that credibility is not at issue when considering a motion for summary judgment, plaintiff cannot establish any harm resulting from the trial court's ruling on the motion in limine.

{¶ 30} Plaintiff's third assignment of error is overruled.

{¶ 31} In her fourth assignment of error, plaintiff challenges the trial court's decision to grant Dr. VerMeulen's motion to continue the trial, then scheduled for December 3, 2001, due to his lead counsel's suffering complication with her pregnancy. The decision to grant or deny a motion for a continuance is within the discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078. When determining whether a trial court has abused its discretion in granting a continuance, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to the moving party. *State v. Scott* (Dec. 28, 2001), Stark App. No. 2001CA0004, 2001 WL 1744125. The objective factors to be considered by the trial court in balancing these two interests include the length of the delay requested, whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the moving party contributed to the circumstances which give rise to the request for a continuance; and any other relevant factors. *Unger* at 67–68, 21 O.O.3d 41, 423 N.E.2d 1078; *Scott.*

{¶ 32} Here, the granting of Dr. VerMeulen's continuance resulted in a delay of a little over three months; not an insignificant period, but not excessive considering that the trial had not previously been continued up to that point. Further, plaintiff does not contend that Dr. VerMeulen's basis for requesting a continuance were anything but legitimate. In fact, plaintiff informed the trial court that she would not oppose a brief continuance to accommodate Dr. VerMeulen's lead counsel's pregnancy. Finally, plaintiff has completely failed to explain how she was prejudiced in any manner by the continuance. Although the continuance at issue may have caused plaintiff some minor inconvenience, under the circumstances, the trial court's decision to grant the continuance did not constitute an abuse of discretion.

{¶ 33} Plaintiff's fourth assignment of error is overruled.

{¶ 34} Plaintiff's fifth, sixth, and seventh assignments of error and Dr. Tweel's sole assignment of error challenges the trial court's rulings on defendant's various motions for summary judgment. Because these assignments of error arise in the context of the trial court's rulings on motions for summary judgment, we review the trial court's determination independently and without

deference. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. In conducting our review, we apply the same standard as did the trial court, *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765: In accordance with Civ.R. 56, summary judgment may only be granted if, viewing the evidence most strongly in favor of the nonmoving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 35} In moving for summary judgment, a party must inform the court of the basis of the motion and identify portions in the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. Once the moving party has made its initial showing, the nonmoving party, in order to avoid summary judgment, must produce evidence on any issues identified by the moving party for which the nonmoving party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (*Celotex Corp. v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

{¶ 36} Plaintiff's fifth and sixth assignments of error, which challenge the trial court's grants of summary judgment for Drs. Tweel and VerMeulen, raise related issues and will be addressed together.

{¶ 37} In order to maintain a wrongful-death or survivorship claim premised on medical malpractice, a plaintiff must establish (1) the applicable standard of care; (2) that the defendant failed to render treatment in conformity with that standard of care; and (3) that the decedent's death or injury was proximately caused by the defendant's breach of the applicable standard of care. *McMullen v. Ohio State Univ. Hosp.* (Sept. 22, 1998), Franklin App. No. 97API10–1301, 1998 WL 655023, overruled on other grounds (2000), 88 Ohio St.3d 332, 725 N.E.2d 1117.

{¶ 38} In granting summary judgment for Drs. Tweel and VerMeulen, the trial court concluded that plaintiff had failed to present any evidence from which a jury could find that the actions of either doctor "probably" were the proximate cause of decedent's death. In challenging this ruling, plaintiff seeks to reframe the causation issue into whether there was any evidence that the conduct of either doctor was the proximate cause of plaintiff's decedent suffering an increased risk of death from his cancer. That is, plaintiff wishes to apply the "loss of chance" doctrine of recovery to the facts of this case.

{¶ 39} Proximate cause is a happening or event that, as a natural and continuous sequence, produces an injury without which the result would not have occurred. *Randall v. Mihm* (1992), 84 Ohio App.3d 402, 406, 616 N.E.2d 1171. The general rule of causation in medical malpractice cases requires the plaintiff to present some competent, credible evidence that the defendant's breach of the applicable standard of care "probably" caused plaintiff's injury or death. *Hitch v. Ohio Dept. of Mental Health* (1996), 114 Ohio App.3d 229, 240, 683 N.E.2d 38. " 'Probably' is defined as 'more likely than not' or a greater than fifty percent chance." *Miller v. Paulson* (1994), 97 Ohio App.3d 217, 222, 646 N.E.2d 521.

{¶ 40} Application of the traditional rule of causation is relatively straightforward in malpractice cases in which the injured party's prognosis for recovery was better than 50 percent at the time of the alleged malpractice. However, when applied to cases in which the injured party's prognosis for recovery was less than 50 percent at the time of the alleged medical negligence, the rule served as a complete bar to recovery due to the impossibility of establishing that an incident of medical negligence "probably" caused the patient's injury or death in circumstances in which the patient's injury or death was more likely than not, even without the incident of malpractice. Thus, even in a case in which it was clear that an incident of medical negligence had reduced a patient's chance of recovery from 49 percent to zero percent, recovery was foreclosed altogether, as plaintiff was logically unable to establish that the negligence was more likely than not the cause of the patient's injury or death. In an attempt to alleviate this harshness, the Ohio Supreme Court adopted the loss-of-chance doctrine of recovery in *Roberts v. Ohio Permanente Med. Group, Inc.* (1996), 76 Ohio St.3d 483, 488, 668 N.E.2d 480.

{¶ 41} As adopted in *Roberts,* the loss-of-chance doctrine permits an injured plaintiff to recover for the loss of a less than 50–percent chance of recovery or survival resulting from medical malpractice. Id. at 485, 668 N.E.2d 480. As such, the loss-of-chance doctrine provides an exception to the traditionally strict standard requiring proof of causation by more than a 50–percent probability. Id. Under *Roberts,* instead of being required to prove that an incident of medical negligence was more likely than not the cause of the patient's injury or death, a plaintiff, who was already suffering from some disease or disorder at the time the malpractice occurred, can recover for his "lost chance" even though the overall possibility of survival or recovery was less than probable. *Roberts,* supra (citing Keith, Loss of Chance: A Modern Proportional Approach to Damages in Texas [1992], 44 Baylor L.Rev. 759, 760). Under the loss-of-chance doctrine, "expert medical testimony showing that a health care provider's negligent act or omission increased the risk of harm to the plaintiff" is sufficient

to maintain an action for the loss of a less-than-even chance of recovery or survival. *Roberts,* supra, at paragraph one of the syllabus.

{¶ 42} In the present case, the parties agree that expert testimony established that decedent had a better-than-even chance of surviving his cancer when both Drs. Tweel's and VerMeulen's alleged incidents of malpractice occurred. Despite this fact, plaintiff did not present any evidence that either Drs. Tweel's or VerMeulen's alleged negligence was the cause of decedent's death. Instead, plaintiff sought to avoid summary judgment by proceeding on the loss-of-chance doctrine. Specifically, plaintiff presented the deposition testimony of Dr. Samuel Taylor, an oncologist specializing in cancers of the throat. With respect to Dr. Tweel, Dr. Taylor opined that, when Dr. Tweel referred decedent to an ENT in August 1997, decedent had a 90–percent chance of being cured. Dr. Taylor further opined that, had Dr. Tweel referred decedent to an ENT in October 1996 when decedent first complained of hoarseness, plaintiff would have had a five-percent improvement in his chance of survival. Thus, Dr. Taylor's testimony would support a finding that Dr. Tweel's delay in referring decedent to an ENT caused plaintiff to suffer a five-percent loss of chance for recovery. With respect to Dr. VerMeulen, Dr. Taylor opined that, had Dr. VerMeulen provided proper followup care for decedent following the completion of his first series of radiation treatments, the recurrence of decedent's cancer would have been detected when there was a 50– to 75–percent chance of obtaining a cure, instead of the 50–percent chance for a cure that existed when the recurrence was actually discovered. Thus, Dr. Taylor's testimony would support a finding that Dr. VerMeulen's failure to provide proper followup care caused plaintiff to suffer as much as a 25–percent loss of chance for recovery.

{¶ 43} The above testimony was sufficient to create a genuine issue of fact regarding whether Drs. Tweel or VerMeulen caused decedent to suffer some lost chance of recovery. Despite this fact, plaintiff may not prevail on her claims against the two doctors, as the case law does not presently allow for the application of the loss-of-chance doctrine to a case, such as the present one, in which the injured patient had an even or greater-than-even chance of recovery at the time of the alleged medical negligence. *Roberts* at 488, 668 N.E.2d 480 (stating that the loss-of-chance doctrine applied to cases involving a "less-than-even chance of recovery or survival"); *Liotta v. Rainey* (Nov. 22, 2000), Cuyahoga App. No. 77396, 2000 WL 1738355 (refusing to apply the loss-of-chance doctrine to a claim in which the patient had an even or greater-than-even chance of survival when the alleged malpractice occurred).

{¶ 44} Plaintiff contends however that when the Ohio Supreme Court's decision in *McMullen v. Ohio State Univ. Hosp.* (2000), 88 Ohio St.3d 332, 725 N.E.2d 1117, and this court's decision in *Miller v. Paulson,* supra, are read

together, it becomes clear that the loss-of-chance doctrine is available where a patient's chance of recovery or survival was even or greater-than-even at the time of the alleged malpractice. We disagree. In *McMullen*, the Supreme Court held that the loss-of-chance doctrine does not apply to a case in which the alleged medical malpractice was proved to be the actual cause of a patient's injury or death, even if the patient had a pre-existing condition that made the patient's injury or death more likely than not without the intervening malpractice. Accordingly, under *McMullen*, a plaintiff is not legally forced to pursue a malpractice claim under the loss-of-chance doctrine simply because the patient at issue had a less-than-even chance of recovery at the time of the alleged malpractice. If the plaintiff proves that the malpractice was an intervening incident that directly caused the patient's injury or death, the plaintiff may proceed under the traditional rule of proximate cause, even though plaintiff also pled loss of chance in the alternative.

{¶ 45} In contrast to *McMullen*, *Miller* involved a patient who had a 90-percent chance of recovery at the time of the alleged malpractice. In analyzing the level of proof required for the plaintiff to recover on her claim, the *Miller* court held that the plaintiff had to establish that the malpractice was "probably" the cause of her loss of all chance of recovery and not merely that the malpractice deprived her of some loss of chance for recovery. Thus, even when read together, *McMullen* and *Paulson* simply support the rule that the loss-of-chance doctrine is available only where the patient had a less-than-even chance for recovery at the time of the alleged malpractice. Because the evidence in the present case was uncontroverted that decedent had an even or greater-than-even chance for recovery at the time of both alleged incidents of malpractice, plaintiff may not pursue her claims based on the loss-of-chance doctrine, but is required to present some evidence that the alleged incidents of malpractice were "probably" the actual cause of decedent's death. Because plaintiff failed to present such evidence with respect to her claims against either Drs. Tweel or VerMeulen, the trial court properly granted summary judgment for both doctors.

{¶ 46} Plaintiff's fifth and sixth assignments of error are overruled.

{¶ 47} Plaintiff's seventh assignment of error and Dr. Tweel's sole assignment of error raise issues related to plaintiff's motion for partial summary judgment against Dr. Tweel on the issue of liability and Dr. Tweel's motion for summary judgment on plaintiff's survivorship claim, respectively. However, our conclusion above that plaintiff failed to present legally sufficient evidence to establish that Dr. Tweel's alleged malpractice caused decedent's death has rendered all other issues related to plaintiff's claims against Dr. Tweel moot. Accordingly, we decline to address plaintiff's seventh and Dr. Tweel's lone assignments of error. App.R. 12(A)(1)(c).

{¶ 48}   In her eighth assignment of error, plaintiff challenges the trial court's denial of her request for sanctions related to Dr. Tweel's motion for partial summary judgment on statute-of-limitations grounds.   A trial court's decision regarding a request for sanctions pursuant to Civ.R. 11 or R.C. 2323.51 will not be reversed absent a showing that the trial court abused its discretion. *Jackson v. Bellomy,* Franklin App. No. 01AP–1397, 2002-Ohio-6495, 2002 WL 31667233, at ¶ 73.   Here, the record reveals that there was considerable confusion over the trial court's November 15, 2001 judgment granting Dr. Tweel summary judgment on plaintiff's survivorship claim.   Apparently, in orally announcing its decision that plaintiff's survivorship claim against Dr. Tweel was barred by R.C. 2305.11(B), the one-year statute of limitations governing medical malpractice claims, the trial court incorrectly led plaintiff to believe that, while her wrongful-death claim against Dr. Tweel was not barred by the one-year statute of limitations, she would be barred from presenting any evidence of medical malpractice in support of that claim.   Although the trial court's written decision granting Dr. Tweel's partial summary judgment motion does not reflect this misunderstanding, the trial court recognized the problem and, in its decision granting plaintiff's motion for reconsideration, made it clear that its grant of summary judgment for Dr. Tweel on plaintiff's survivorship claim would in no way prevent plaintiff from fully litigating her wrongful-death claim against Dr. Tweel.

{¶ 49}   In the context of this confusion, plaintiff's counsel has attempted to turn Dr. Tweel's good-faith arguments regarding his entitlement to summary judgment on plaintiff's survivorship claim into frivolous conduct entitling him to sanctions.   In fact, the record provides no evidence that Dr. Tweel played any role in the trial court's mistaken impression regarding the effect of its dismissal of plaintiff's survivorship claim on plaintiff's wrongful-death claim.   At all times, Dr. Tweel sought only to argue that he was entitled to summary judgment on plaintiff's survivorship claim.   Thus, plaintiff's request for sanctions arising out of these events was wholly without merit and the trial court did not abuse its discretion in denying the request.

{¶ 50}   Plaintiff's eighth assignment of error is overruled.

{¶ 51}   Having overruled plaintiff's first, second, third, fourth, fifth, sixth, and eighth assignments of error, and found plaintiff's seventh assignment of error and Dr. Tweel's sole assignment of error to be moot, we affirm the judgment of the trial court.

Judgment affirmed.

Bowman and Peggy Bryant, JJ., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.