DECISION.
{¶ 1} Plaintiff-appellant Linda L. Wilson appeals from the trial court's judgment granting a directed verdict in favor of defendants-appellees Edward Horton, Jr., M.D., and Northeast Radiology. Because we conclude that Wilson's sole assignment of error has merit, we reverse the judgment of the trial court.
 {¶ 2} On January 15, 1999, Wilson's husband, Michael, had a chest x-ray performed by Horton, a radiologist. Michael had been referred to Horton for the x-ray after complaining of a "hollow feeling" in his chest. Horton reviewed the x-ray and reported that the film showed a "normal chest." When he thereafter complained of shortness of breath, chest pain, and difficulty in breathing during sleep, Michael was referred to Dr. David Dortin, a pulmonologist, for evaluation and for another chest x-ray on August 25, 1999. Dr. Alex Chronis reviewed the x-ray and noted a density in the upper left lobe of the lung. A biopsy revealed that Michael had non-small-cell adenocarcinoma. On September 30, 1999, Michael underwent surgery to remove the tumor. Because the cancer had not metastasized, no chemotherapy or other cancer treatment was ordered. When Michael again experienced symptoms in January 2000, further testing showed that the cancer had spread to his liver. Michael was given chemotherapy and radiation treatment. The treatment was unable to stop the growth of the cancer, and Michael died on September 15, 2000.
 {¶ 3} Wilson filed suit against Horton and Northeast Radiology, alleging wrongful death. A jury trial commenced on January 20, 2004. After presentation of the plaintiff's case, Horton's counsel moved for a directed verdict, claiming that Wilson had not presented sufficent evidence concerning the standard of care and causation. The trial court indicated to the parties that it was inclined to treat the case as one involving a loss-of-chance claim and that it would so instruct the jury. Neither party agreed that the loss-of-chance doctrine applied to the case. Because Wilson did not want to proceed on a loss-of-chance theory, and at the urging of both parties, the trial court granted a directed verdict in favor of Horton and Northeast Radiology.
 {¶ 4} In her sole assignment of error, Wilson contends that the trial court erred in granting a directed verdict. She claims that she presented sufficient evidence of medical malpractice, and that the loss-of-chance theory did not apply to her case. Horton does not dispute Wilson's contention regarding the loss-of-chance issue. Instead, Horton urges us to conclude that the trial court was right for the wrong reason, because a directed verdict should have been granted based on Wilson's failure to present sufficient evidence of causation.
 {¶ 5} A directed verdict is properly granted where "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *."[1] The issue in this case is whether Wilson presented "any evidence of substantive probative value" to support her claim that Horton's failure to diagnose her husband's tumor in January caused his wrongful death.[2]
 {¶ 6} Prior to 1996, Ohio adhered to a traditional standard of causation, requiring "proof, in terms of probability, that defendant's conduct proximately caused plaintiff's injuries or death."[3] The Ohio Supreme Court first recognized the loss-of-chance theory in Roberts v. Ohio Permanente MedicalGroup, Inc.[4] The theory allows for compensation where the decedent had a less-than-even chance of survival when the defendant's alleged negligent act or omission occurred.[5]
Under the theory, "[i]nstead of being required to prove with reasonable probability that defendant's tortious conduct proximately caused injury or death, the plaintiff, who was already suffering from some disease or disorder at the time the malpractice occurred, can recover for his or her `lost chance' even though the possibility of survival or recovery is less than probable."[6] Since Roberts, courts have declined to extend the theory to those cases in which a decedent with a greater than fifty-percent chance of survival suffers a diminishment of that chance.[7]
 {¶ 7} In the case before us, one of Wilson's experts, Dr. Raymond Weiss, testified that, at the time of the x-ray in January 1999, Michael's chance of survival was "more likely than not" sixty percent. During cross-examination, Weiss agreed with Horton's counsel that "more likely than not" meant that there was a fifty-one-percent chance that Michael's chance of survival was sixty percent. Based on this testimony, the trial court concluded that Michael's chance of survival in January 1999 was, in reality, just over thirty percent.[8] Thus, the trial court concluded that the loss-of-chance theory applied.
 {¶ 8} We agree with Wilson that Weiss, in citing the fifty-one-percent figure, was articulating that he believed Michael's sixty-percent survival chance was a reasonable medical probability. The trial court erred in diminishing the percentage of the survival chance. To conclude otherwise would mean that every time a medical expert opines about a chance of survival with reasonable medical probability, the chance would be diminished by forty-nine percent; rarely would a plaintiff begin with greater than a fifty-percent chance of survival.
 {¶ 9} After construing the evidence most strongly in favor of Wilson, we conclude that Michael's chance of survival in January 1999 was sixty percent. Because application of the loss-of-chance theory is limited to those cases in which the decedent had a less-than-even chance of survival, we conclude that the theory did not apply here, and that the trial court erred in granting a directed verdict based on the theory.
 {¶ 10} Horton does not argue that this was a loss-of-chance case. Rather, he argues that a directed verdict should have been granted because Wilson did not present sufficient evidence of causation under the Cooper line of cases. For the reasons that follow, we disagree with this contention.
 {¶ 11} Horton points to the testimony of Weiss during cross-examination. Weiss stated that Michael's cancer was in stage IA when the tumor was removed from his lung in September 1999. Weiss went on to state that had the tumor been discovered in January 1999, the cancer would have been staged at IA at that time. As discussed, the survival rate for a patient with non-small-cell adenocarcinoma in stage IA is sixty percent. Horton contends that because Weiss testified that the survival chance was sixty percent in January 1999 and still sixty percent in September 1999, Wilson had not presented evidence that Horton's actions caused Michael's death. But Weiss had first testified as follows:
 {¶ 12} "Q. Doctor, based on your education, training, experience and review of these documents, were you able to form an opinion to a reasonable degree of medical probability whether or not, more likely than not, had the chest film from January 15, 1999, not been read as normal, that Michael Wilson would have survived his cancer?
 {¶ 13} "A. Yes, I have formed an opinion, and the answer is yes, more likely than not."
 {¶ 14} Weiss further testified that a pathology report indicated that when the tumor was removed in September, the cancer had invaded a blood vessel. According to Weiss, the pathology report itself would not have changed the staging for Michael in September. But in hindsight, given the speed with which the cancer appeared in Michael's liver, Weiss concluded that the tumor had begun to metastasize in January, and that the failure to diagnose and remove the tumor in January moved Michael to the forty-percent group that would not survive the cancer.
 {¶ 15} Although Weiss's testimony that Michael was in stage IA in January and September seems to contradict his testimony that the failure to diagnose the cancer in January caused Michael's death, we conclude that the contradiction would go to Weiss's credibility and the weight accorded to his testimony by the jury. For purposes of a directed verdict, however, we conclude that sufficient evidence was presented regarding causation. Accordingly, a directed verdict should not have been granted.
 {¶ 16} Because the trial court erred in granting a direct verdict in Horton's favor, Wilson's sole assignment of error has merit. Therefore, the judgment of the trial court is reversed, and this cause is remanded for further proceedings in accordance with law.
Judgment reversed and cause remanded.
Doan, P.J., and Gorman, J., concur.
[1] Civ. R. 50(A)(4).
[2] Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co.
(2002), 95 Ohio St.3d 512, 514, 769 N.E.2d 835.
[3] Roberts v. Ohio Permanente Medical Group, Inc. (1996),76 Ohio St.3d 483, 487, 668 N.E.2d 480, citing Cooper v. Sisters ofCharity of Cincinnati, Inc. (1971), 27 Ohio St.2d 242,272 N.E.2d 97.
[4] Id. at paragraph one of the syllabus.
[5] Id. at 485.
[6] Id.
[7] See Liotta v. Rainey (Nov. 22, 2000), 8th Dist. No. 77396; McDermott v. Tweel (2003), 151 Ohio App.3d 763,786 N.E.2d 67.
[8] The trial court multiplied fifty-one percent by sixty percent.