OPINION
{¶ 1} Defendant-appellant, Keith Hover, appeals his conviction and sentence in the Warren County Court of Common Pleas for receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. The offense was charged as a felony of the fifth degree, in that the value of the property stolen was five hundred dollars or more but less than five thousand dollars. A similar indictment was handed down against appellant's twin brother, Kevin Hover. The charges arose from allegations that Kevin stole approximately $3,700 worth of construction tools from the house of one of his neighbors, James Michael Brounzie, and that appellant offered to sell the tools to a co-worker, Chris Boyle.
 {¶ 2} On October 14-15, 2004, appellant and Kevin were tried together by a jury. Boyle, one of the state's key witnesses, testified that appellant had told him that his brother, Kevin, had taken some tools from a neighbor's house, and that appellant had asked him if he was interested in buying any of them. Boyle declined the offer, but, nevertheless, subsequently obtained a list of the tools that had been taken. Boyle also learned from which house the tools had been taken.
 {¶ 3} After appellant brought the tools to work one day, Boyle decided to contact the owner of the tools, who Boyle discovered was James Brounzie. The two men met, and Boyle shared what appellant had told him. Brounzie listed the tools that had been taken from his house, and Boyle confirmed that those were the kinds of tools that appellant had offered to sell him. Brounzie then relayed this information to Detective Michael Jesse of the Mason City Police Department.
 {¶ 4} Detective Jesse testified that he went to Kevin's house to speak with him. Kevin was not home when Detective Jesse arrived. However, Kevin's girlfriend was there. She offered to call Kevin and tell him what was going on. After she placed the call, Detective Jesse and Kevin spoke together over the phone. Detective Jesse told Kevin that he believed there were some stolen items in Kevin's garage. At first, Kevin told the detective that "he didn't know what [he] was talking about." However, after Detective Jesse told Kevin that he was "very confident" about his information, Kevin told Detective Jesse that there were certain items in his garage that appellant brought over, but he did not know whether they were stolen or not. Kevin told Detective Jesse, "if they're in there you can have them. If they're not mine you can have them."
 {¶ 5} Kevin then asked his girlfriend over the telephone to open the garage for Detective Jesse, and he directed him to the location of the items that appellant had brought over. Detective Jesse found the items, which were construction tools, underneath a countertop in Kevin's garage. Kevin also told Detective Jesse that he was currently using a saw that appellant had brought over to his house. Later that day, Kevin brought the saw to the police station.
 {¶ 6} Detective Jesse further testified that while he was in Kevin's garage, appellant, who lived in the house across the street, came by and asked what was going on. Detective Jesse told appellant that he was there to retrieve stolen tools. Detective Jesse asked appellant where he had obtained the tools, and appellant told him that someone named "T.J.," who was dating his and Kevin's niece, had brought them to appellant's house and left them there since he did not "need them any longer." Appellant said he then brought the tools over to Kevin's house because Kevin had room in his garage to store them.
 {¶ 7} Appellant later told Detective Jesse that T.J.'s actual name was Owen Thomas Bell, Jr., and that Bell was in the Butler County Jail. When Detective Jesse tried to find Bell, he learned that the jail had not had anyone with the last name of "Bell" for several weeks. Detective Jesse contacted Brounzie, who confirmed that the tools that had been recovered from Kevin's garage were, in fact, the tools that had been taken from his house.
 {¶ 8} Appellant and Kevin testified on their own behalf. Both denied stealing tools from Brounzie's house. Appellant denied telling Boyle that Kevin had stolen the tools and denied offering to sell them to Boyle. Appellant also testified that he did not know how the tools got in his house, but stated that several people were "going in and out" of his residence, including Bell. Both appellant and Kevin testified that appellant had asked Kevin to allow him to store the tools in Kevin's garage until the tool's rightful owner claimed them.
 {¶ 9} Appellant and Kevin were both convicted of the offense of receiving stolen property, as charged. Appellant was sentenced to serve 90 days in the Warren County Jail and two years of community control, and was further ordered to pay one-half of the restitution due Brounzie. Kevin was ordered to serve 60 days in the Warren County Jail and two years of community control, and was further ordered to pay the other half of the restitution due Brounzie.
 {¶ 10} Appellant now appeals from his conviction and sentence, raising five assignments of error. The assignments of error are addressed below in an order that facilitates our analysis.
 {¶ 11} Assignment of Error No. 5:
 {¶ 12} "THE TRIAL COURT'S INSTRUCTIONS TO THE JURY WERE PREJUDICIAL AND PLAIN ERROR."
 {¶ 13} In his fifth assignment of error, appellant argues that the trial court committed several instances of plain error in instructing the jury in this case. First, he contends that the trial court committed plain error in instructing the jury on the element of "knowingly," with respect to the offense of receiving stolen property. We agree with this argument.
 {¶ 14} R.C. 2913.51 states, in pertinent part:
 {¶ 15} "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 16} "* * *
 {¶ 17} "(C) Whoever violates this section is guilty of receiving stolen property. * * * If the value of the property involved is five hundred dollars or more and is less than five thousand dollars, * * * receiving stolen property is a felony of the fifth degree."
 {¶ 18} R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} The term "probably" has been defined as "more likely than not" or "a greater than fifty percent chance." McDermott v. Tweel,151 Ohio App.3d 763, 773, 2003-Ohio8-85.
 {¶ 20} Section 513.51 of Ohio Jury Instructions ("OJI") defines the offense of receiving stolen property in violation of R.C. 2913.51, as including the element of "knowingly."[1] OJI defines "knowingly," as follows:
 {¶ 21} "* * * A person acts knowingly, regardless of his purpose, when (he is aware that his conduct will probably cause a certain result) (he is aware that his conduct will probably be of a certain nature). A person has knowledge of circumstances when he is aware that such circumstances probably exist. * * *.
 {¶ 22} "* * * Knowingly means that a person is aware of the existence of the facts and that his acts will probably (cause a certain result) (be of a certain nature).
 {¶ 23} "* * *
 {¶ 24} "* * * Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that _________." 4 Ohio Jury Instructions (2003) 61, Section 409.11.
 {¶ 25} As can be seen from comparing the two, the definition of "knowingly" found in Section 409.11 of OJI comports with the definition of that term found in R.C. 2901.22(B).
 {¶ 26} In this case, the trial court's instructions to the jury defined the term "knowingly," as follows:
 {¶ 27} "Each person has [sic] knowingly regardless of each person what he or she was aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he's aware that such circumstances probably exist. Since you can not look into the mind of another and determine from all the facts and circumstances in evidence you will determine from these facts and circumstances whether there existed in the mind of each defendant an awareness of the possibility that the property was obtained through the commission of a theft offense. So that's the first element you're going to have to focus on. Did they know this property had been stolen." (Emphasis added.)
 {¶ 28} As the foregoing demonstrates, there were significant deviations between the trial court's instruction on the element of "knowingly" and the proposed instruction for that term appearing in OJI. For example, OJI's definition of "knowingly" states, "A person acts knowingly, regardless of his purpose, when (he is aware that his conduct will probably cause a certain result) (he is aware that his conduct will probably be of a certain nature)." By contrast, the trial court's instruction stated, "Each person has [sic] knowingly regardless of each person what he or she was aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 29} The OJI definition of "knowingly" also states, "Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that ___________." (Emphasis added.) 4 Ohio Jury Instructions (2003) 61, Section 409.13. By contrast, the trial court's instruction stated, "Since you can not look into the mind of another and determine from all the facts and circumstances in evidence you will determine from these facts and circumstances whether there existed in the mind of each defendant an awareness of the possibility that the property was obtained through the commission of a theft offense."
 {¶ 30} The trial court's deviations from OJI's proposed instruction on "knowingly" rendered its instruction confusing and extremely difficult, if not impossible, for the average juror to follow. The most serious error in the trial court's instruction regarding the element of "knowingly" was its use of the term "possibility," rather than "probability."
 {¶ 31} A "possibility" is defined as "an event that may or may not happen." Black's Law Dictionary (8th Ed. 2004) 1203. A "probability," on the other hand, is defined as "[a] condition or state created when there is more evidence in favor of the existence of a given proposition than there is against it." Black's Law Dictionary (6th Ed. 1990) 1201. The term "probability" has also been defined as "more likely than not" or a "greater than fifty percent chance." See Weiner v. Kwiat (June 27, 2003), Montgomery App. No. 19289 (relying on the definition of "probably" found in McDermott, 151 Ohio App.3d at 773).
 {¶ 32} "[A] trial court must fully and completely give the jury all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Tomaino
(1999), 135 Ohio App.3d 309, 315, citing State v. Comen (1990),50 Ohio St.3d 206.
 {¶ 33} In this case, the trial court instructed the jury that in order to find that appellant acted "knowingly," it only needed to find that he had "an awareness of the possibility" — as opposed to probability — "that the property was obtained through the commission of a theft offense." The trial court's use of the term "possibility" rather than "probability" improperly lowered the state's burden of proof with respect to that element. The trial court erred by using the term "possibility," rather than "probability," in instructing the jury on the term "knowingly."
 {¶ 34} However, appellant failed to raise a timely objection to this erroneous instruction. Crim.R. 30 provides, in pertinent part: "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 52(B), on the other hand, provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 {¶ 35} The Ohio Supreme Court has held that "[t]he failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus, approving and following, State v. Long (1978), 53 Ohio St.2d 91. It has also stated that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, 53 Ohio St.2d 97.
 {¶ 36} The plain error standard is a difficult one for a defendant to meet, and rightfully so. As the Ohio Supreme Court stated in Long:
 {¶ 37} "`* * * The normal rule is that an appellate court should not consider questions which have not been properly raised in the trial court and upon which the trial court has had no opportunity to pass. The plain error rule should be applied with caution and should be invoked only to avoid a clear miscarriage of justice. To exercise the right freely would undermine and impair the administration of justice and detract from the advantages derived from orderly rules of procedure.'" Long,53 Ohio St.2d at 95-96, quoting Gendron v. United States (C.A. 8, 1961),295 F.2d 897, 902.
 {¶ 38} Although the standard for plain error is a difficult one to meet, we conclude that the trial court's instruction regarding the element of "knowingly" constituted plain error under the facts and circumstances present here.
 {¶ 39} As we have already indicated, the most troubling aspects of the trial court's erroneous instruction is that it significantly altered the definition of "knowingly," which is a material element of the charged offense, in that it used the term "possibility" rather than "probability," and the instruction itself, as a whole, was confusing. By failing to instruct a jury properly on the material elements of the offense with which a defendant has been charged, a trial court essentially precludes a defendant from being tried on the offense for which he was indicted and, thus, for which he had been provided fair notice by way of the indictment.
 {¶ 40} The Ohio Supreme Court has followed Long even in cases where the trial court erred by failing to instruct the jury on a material element of the offense. In State v. Adams (1980), 62 Ohio St.2d 151, the court overturned a court of appeal's reversal of a defendant's conviction for involuntary manslaughter. The court of appeals had overturned the defendant's conviction on the grounds that the trial court committed plain error by failing to instruct the jury on "the degree of mental culpability requisite to a finding of criminal liability under the endangering children statute (R.C. 2919.22)." Id. at 152. In reversing the court of appeals' decision, the Adams court stated:
 {¶ 41} "Consistent with State v. Long [53 Ohio St.2d 91], we hold that a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does notper se constitute plain error nor does it necessarily require reversal of a conviction. [Footnote omitted.] Only by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice." Adams, 62 Ohio St.2d at 154.
 {¶ 42} Adams makes it clear that a trial court's failure to properly instruct a jury on a material element of an offense is not, per se, grounds for reversal. Id. Instead, a reviewing court must review the record to determine if the defendant sustained "substantial prejudice" as a result of the erroneous instruction, which "thereby resulted in a manifest miscarriage of justice." Adams, 62 Ohio St.2d at 154. We conclude that the trial court's erroneous instruction amounted to plain error under the facts and circumstances of this case.
 {¶ 43} This case came down to credibility: the jury had to ultimately decide whether to believe the state's witnesses, particularly Boyle, or appellant. The trial court's erroneous instruction substantially lowered the state's burden of proof on that element. Under these circumstances, we conclude that the trial court committed plain error in instructing the jury on the element of "knowingly" with respect to the offense of receiving stolen property.
 {¶ 44} It must be noted for the record, that we do not know if the trial court's erroneous instruction arose simply as a result of the trial court's misstating the proposed instructions in OJI, or as a result of an error by the court reporter in transcribing the proceedings. The transcript of the trial proceedings indicates that the jury was furnished with a copy of the trial court's written instructions. The written instructions were not made part of the record on appeal. When the trial court furnished a copy of its written instruction to the jury, it told them, "[D]on't feel compelled to read along[;] if you would rather just listen that's fine. It's what I say that controls, it's not what's on the paper." Thus, we are compelled to assume that the instructions outlined in the transcript are the ones that the jury relied upon in arriving at its guilty verdict against appellant.
 {¶ 45} Nevertheless, we note that R.C. 2945.10(G), which governs the order of trial proceedings in regard to written jury instructions, states, in pertinent part:
 {¶ 46} "The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the juryin their retirement and returned with their verdict into court and remainon file with the papers of the case." (Emphasis added.)
 {¶ 47} Pursuant to R.C. 2945.10(G), written instructions that are provided to a jury must be returned to the trial court, following the jury's deliberations, and the written instructions must then "remain on file with the papers of the case." While the Ohio Supreme Court has held that "[t]he failure of the trial court to maintain written jury instructions with the `papers of the case' in violation of R.C. 2945.10(G) is not a structural error[,]" trial courts are, nevertheless, obligated to follow that provision's requirements.
 {¶ 48} Appellant raises two additional claims of plain error with respect to the jury instructions that we need to discuss. The first involves a clarification that the trial court issued to the jurors, at the state's request, regarding the instructions that the trial court had just provided to them, as to the elements of the offense of receiving stolen property.
 {¶ 49} After the trial court had issued its instructions to the jury, the prosecutor told the trial court that it had just "mentioned to the jury that the knowing element and having reasonable cause to believe [element] had to both be proven." The prosecutor requested that the trial court "make it clear" to the jury that "it's either one or the other, it can be both but it doesn't have to be." The trial court issued the following clarification to the jury:
 {¶ 50} "If I said both I was in error. It is alternatively[;] it's either that they knew or had reasonable cause to believe. I hope that I said it that way. I stand corrected if I did not. I instruct you now that either is acceptable. The State must proven [sic] either that they knew the property had been stolen or they had reasonable cause to believe that the property had been stolen."
 {¶ 51} Appellant contends that the trial court's use of the word "they" was ambiguous, and the jury could have been confused as to whether the "they" referred to appellant and Kevin, or the state. We find this argument unpersuasive.
 {¶ 52} "In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in its relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results." State v. Hardy (1971),28 Ohio St.2d 89, 92.
 {¶ 53} In this case, when the trial court's instruction is "taken as a whole," and the word "they" is "considered in its relation to, and as it affects and is affected by the other parts of the charge," we conclude that the jury realized that the "they" referred to by the trial court, referred to appellant and Kevin and not the state.
 {¶ 54} Appellant's remaining claim of plain error involves the trial court's instruction to the jurors that "you should not surrender honest conviction in order to be congenial or to reach a verdict solely because it's the opinion of the jury." Appellant contends that with this instruction, "the trial court is advising the jurors not to surrender something called a conviction. This word sounds very much like a finding of guilty and is not balanced by an instruction that the jury could also have an honest acquittal." We find this argument unpersuasive.
 {¶ 55} The challenged instruction substantially complied with the one set forth in 4 Ohio Jury Instructions (2003) 106, Section 413.70. The trial court did make several minor errors in issuing this particular instruction to the jury. For instance, the trial court's instruction to the jurors that they should not surrender honest conviction in order to be congenial or to reach a verdict `solely because it's the opinion ofthe jury," (emphasis added), should have actually stated, "solely becauseof the opinion of other jurors." See id. However, this error, standing alone, does not rise to the level of plain error, and appellant does not contend otherwise. Nevertheless, the trial court should correctly recite the instruction appearing in OJI if the need arises to issue it again during the proceedings on remand.
 {¶ 56} Appellant's fifth assignment of error is sustained to the extent indicated.
 {¶ 57} Assignment of Error No. 1:
 {¶ 58} "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO MAKE AN ISSUE OF THE CHARACTER OF THE DEFENDANT IN THE STATE'S CASE IN CHIEF."
 {¶ 59} Appellant argues that the trial court committed reversible error in permitting the state, during the presentation of its case-in-chief, to ask one of its witnesses if he had an opinion as to appellant's "truthfulness and veracity." Appellant asserts that such testimony is inadmissible pursuant to Evid.R. 404(A). However, appellant failed to raise an objection to this question at trial; therefore, any error that the trial court may have committed in allowing the question was waived unless it constituted plain error. See State v. Gillard
(1988), 40 Ohio St.3d 226, 230, citing Crim.R. 52(B). Generally, plain error does not occur unless it can be said that "but for the error, the outcome of the trial clearly would have been otherwise." Long,53 Ohio St.2d at 97.
 {¶ 60} In this case, appellant's attorney asked Boyle on cross-examination whether he recalled appellant telling him about an incident in which appellant's tools had been stolen from his own front porch. Boyle stated that he did remember appellant telling him that, but that he had "discounted it." When appellant's attorney asked Boyle, "What do you mean you discounted it?," Boyle answered, "I didn't believe that somebody came in his front yard and took tools out of his truck." Appellant's attorney then asked, "Okay, but he did tell you that?," to which Boyle answered, "Yeah. He said that[;] he never said what was taken or anything. He actually said cash was taken out of his car but I don't recall him saying what tools were taken, if any."
 {¶ 61} On redirect examination, the prosecutor stated his intention to "explore" Boyle's previous statement during cross-examination that he discounted what appellant had said regarding tools being taken from his porch and cash being taken from his car. Accordingly, the prosecutor asked Boyle if he had an opinion about appellant's "truthfulness and veracity." Boyle answered, "[h]e's been known to lie and stretch the truth[.]" The prosecutor then asked, "Is that the reason why you discounted what he told you about the missing tools and cash?" Boyle answered, "That and the whole situation was just very unlikely."
 {¶ 62} Appellant's trial counsel did not object to this line of questioning. Instead, he asked Boyle on recross-examination, "When has he been known to lie?," and Boyle answered:
 {¶ 63} "Several times. I mean it was a lot of little things, nothing major that I knew about, but it was all the time about small things. Where he was, what time he got the jobs and things. I'd be at a job and he would not know I was there and he would say he was there when I knew he wasn't. Things like that, small things."
 {¶ 64} As appellant points out, subject to certain exceptions, Evid.R. 404(A) prohibits the state from introducing "[e]vidence of a person's character or a trait of his character * * * for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" So the prosecutor's question should have been stricken, and the trial court committed error by failing to do so. However, when the question is examined in context, it is clear that the trial court's failure to sua sponte strike the question and the answer did not amount to plain error. In fact, it may not have amounted to error at all, since appellant's trial counsel arguably "opened the door" to questioning about why Boyle "discounted" appellant's claim that his tools had been stolen from his own front porch, by cross-examining Boyle, himself, on that issue and may be why defense counsel chose not to object to the prosecutor's decision to question Boyle about his opinion as to appellant's "truthfulness and veracity."
 {¶ 65} Moreover, it does not appear that appellant suffered any significant prejudice from his counsel's failure to object to the prosecutor's questioning about appellant's reputation for truthfulness and veracity. Defense counsel followed up on the prosecutor's question to Boyle about appellant's truthfulness and veracity, and Boyle's answer that appellant had "been known to lie and stretch the truth," by asking Boyle on recross-examination to explain his response that appellant had been known to lie. Boyle responded that he had known appellant to lie about "small things."
 {¶ 66} When considered in context, this answer could not have done much to prejudice the jury against appellant or to bolster the credibility of Boyle's testimony against appellant. Boyle had already testified on direct examination that appellant told him that he and Kevin had lied to the police about who took the tools, and that appellant and Kevin were blaming Bell for taking the tools. Furthermore, Boyle's answer may have even caused the jury to disbelieve or, at least, question the fairness and accuracy of Boyle's opinion regarding appellant's truthfulness or veracity. Additionally, the question regarding Boyle's opinion of appellant's truthfulness and veracity was directed towards a side issue, i.e., why Boyle "discounted" appellant's claim that he, himself, had been victimized by the theft of his tools.
 {¶ 67} We conclude that the admission of this testimony did not amount to plain error, since it is not clear that, but for the allegedly erroneous admission of Boyle's testimony, the outcome of the trial clearly would have been different. See Long, 53 Ohio St.2d at 97.
 {¶ 68} Appellant's first assignment of error is overruled.
 {¶ 69} Assignment of Error No. 2:
 {¶ 70} "THE TRIAL COURT ERRED IN PERMITTING A LAWYER WHO HAD A CONFLICT IN INTEREST TO REPRESENT TWO CRIMINAL DEFENDANTS IN THE SAME TRIAL."
 {¶ 71} Appellant argues that the trial court committed reversible error by allowing his attorney to represent both him and Kevin in the same trial. However, because Kevin chose not to appeal his conviction and sentence, only appellant will be subject to a retrial on remand, in light of our disposition of appellant's fifth assignment of error. Accordingly, this assignment of error has been rendered moot; therefore, we need not decide it. See App.R. 12(A)(1)(c).
 {¶ 72} Assignment of Error No. 3:
 {¶ 73} "THE TRIAL COURT ERRED BY NOT CONDUCTING THE PRETRIAL IN OPEN COURT AND ON THE RECORD."
 {¶ 74} Appellant argues that the trial court committed reversible error in not conducting certain pretrial proceedings "in open court and on the record." The record shows that both the prosecutor and appellant's attorney were notified that a pretrial hearing would be held on September 17, 2004 and that a "conference with the court" would be held on October 12, 2004. There is nothing in the record to show what may have occurred during this pretrial hearing and court conference. Appellant essentially argues that the absence of a record, alone, demonstrates the problem with not recording these pretrial proceedings, since it prevents him from challenging the validity of certain aspects of the proceedings against him. We find appellant's argument unpersuasive.
 {¶ 75} We agree with the proposition that a criminal defendant has a right to a public trial, and that this right extends to pretrial proceedings. See State v. Cassano, 96 Ohio St.3d 94, 104, 2002-Ohio-3751. However, appellant's counsel is presumed competent under the laws of this state. See State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156. If anything substantive had occurred at that pretrial hearing or court conference that needed to be preserved for purposes of review, we presume that appellant's counsel would have sought to have those proceedings recorded. There is nothing in the record to show that appellant was prohibited from having those proceedings recorded.
 {¶ 76} Furthermore, there is nothing in the record to show that appellant was prejudiced in any way by not having the pretrial hearing or court conference recorded. Therefore, we reject appellant's contention that the trial court committed reversible error by not holding certain pretrial proceedings "on the record and in open court."
 {¶ 77} Appellant's third assignment of error is overruled.
 {¶ 78} Assignment of Error No. 4:
 {¶ 79} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 80} We conclude that this assignment of error has been rendered moot as a result of our disposition of appellant's fifth assignment of error. Therefore, we need not decide appellant's fourth assignment of error.
 {¶ 81} The trial court's judgment is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion and in accordance with the laws of this state.
Powell, P.J., and Bressler, J., concur.
[1] { ¶ a} Section 513.51 of Ohio Jury Instructions proposes the following instruction for the offense of receiving stolen property in violation of R.C. 2913.51:
{¶ b} "1. The defendant is charged with receiving stolen property. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the __________ day of _______, _____, and in __________ (County) (other jurisdiction), Ohio, the defendant (received) (retained) (disposed of) property of (describe victim) (knowing) (having reasonable cause to believe) that the property had been obtained through the commission of a theft offense.
{¶ c} "2. PROPERTY * * *.
{¶ d} "3. KNOWINGLY. 4 OJI 409.11; R.C. 2901.22(B).
{¶ e} "4. REASONABLE CAUSE TO BELIEVE. In determining whether the defendant had reasonable cause to believe that the property was obtained through a theft offense you must put yourself in the position of this defendant with his/her knowledge, or lack of knowledge, and under the circumstances and conditions that surrounded him/her at that time. You must consider the conduct of the persons involved and determine if their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense.
{¶ f} "5. THEFT OFFENSE. * * *.
{¶ g} "6. ADDITIONAL FINDINGS:
{¶ h} "VALUE * * *.
{¶ i} "* * *.
{¶ j} "7. CONCLUSION * * *.
{¶ k} "8. CONCLUSION WITH LESSER INCLUDED OFFENSE * * *." (Emphasis added.) 4 Ohio Jury Instructions (2003) 451, Section 513.51.