In the Matter of the Estate of LIONEL J. SALOMON, Deceased.

Surrogate's Court, Kings County, May 6, 1936.

*David L. Podell* [*Benjamin Algase* and *Robert J. Rudner* of counsel], for Adeline Hayes, petitioner.

*Englehard, Pollak, Pitcher, Stern & Clark* [*Walter H. Pollak, Solomon M. Stroock, Ruth I. Wilson* and *G. Frank Dougherty* of counsel], for The New York Foundation, respondent.

*Geller, Ralston & Blanc,* for the Farmers Loan and Trust Company (now City Bank Farmers Trust Company), as executor, respondent.

*Leon Forst,* for George Gans, respondent.

WINGATE, S.   The present petition to vacate a decree of probate entered on June 9, 1925, presents certain features which, aside from the size of the estate involved, distinguish it from the constant stream of similar applications.   The decree in question has stood unassailed for more than half a generation.

The will which was probated was dated on October 22, 1923, and was the last of a long series of similar documents executed by the testator.   So far as is presently material, it created a trust of $30,000 for the life benefit of petitioner's mother who was a niece of the testator, with remainder to The New York Foundation.

The immediately preceding will, executed in 1920, had provided for the erection of twenty-four and sixty-four one-hundredths of the residuary estate into a trust for the life benefit of this same niece, but had also directed that, on its termination, the principal should go " to the descendants of the said Sarah Gans, then surviving, *per stirpes*, or, if none survive such time, then to the said New York Foundation."

At the time of testator's death his niece had two children, the present petitioner, Adeline Hayes, and a son, George Gans.

A digression may be indulged at this point to note that the petitioner did not receive a " vested remainder " under the trust for her mother in the 1920 will as she and her attorney repeatedly assert in their papers. The gift " to the descendants " was purely a gift to a class within the thoroughly familiar definition of such a benefit (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 97; *Matter of Kimberly*, 150 id. 90, 93; *Matter of Russell*, 168 id. 169, 174; *Matter of Ackerman*, 137 Misc. 910, 915; *Matter of Fleishfarb*, 151 id. 399, 402), wherefore only those persons who chanced to be in being at the time of possession would be entitled to take (*Teed* v. *Morton*, 60 N. Y. 502, 506; *Bisson* v. *W. S. R. R. Co.*, 143 id. 125, 139; *Matter of Allen*, 151 id. 243, 247; *Gilliam* v. *Guaranty Trust Co.*, 186 id. 127, 133; *Matter of Leonard*, 218 id. 513, 521; *Matter of Harned*, 138 Misc. 546, 548; affd., 234 App. Div. 796; *Matter of Weil*, 151 Misc. 841, 850; affd., 245 App. Div. 822), and at any time prior thereto would be the possessors of purely contingent interests conditioned on survivorship of the lives by which the trust was limited (*Wright* v. *Wright*, 225 N. Y. 329, 336; *Smith* v. *Edwards*, 88 id. 92, 109; *Matter of Hopner*, 148 Misc. 748, 751; *Matter of Gurlitz*, 134 id. 160, 166; *Matter of Nebe*, 155 id. 392, 394). This fact, while legally incontrovertible in any event, is emphasized by the directions of the will which provide for a gift over in the event of death of the niece without issue.

The 1920 will was never filed in this court and no proceeding looking to its production, as authorized by section 137 of the Surrogate's Court Act, was ever instituted, wherefore, the present petitioner was not a necessary party to the probate proceeding under section 140 of the Surrogate's Court Act, since she was not a " beneficiary in any other will of the same testator filed in the surrogate's office." (*Matter of Bray*, 146 Misc. 415, 416; *Matter of Eisenlohr*, 153 id. 130.) Whereas, therefore, it would have been permissible for her to apply to intervene in the proceeding for the protection of any interest which she might possess (*Walsh* v. *Ryan*, 1 Bradf. 433, 434), thus making her a proper party, any such application would be addressed solely to the discretion of the court. (*Matter of Bray, supra.*)

The petitioner seeks in part to support her application for the vacating of the decree by the claim that a constructive fraud was practiced upon her shortly prior to the date on which the will was admitted to probate. The facts upon which this contention is based are not in dispute. Objections to probate had been filed by a number of interested parties, among others, by Sarah Gans, the mother of the petitioner, through her attorneys, Messrs. Poor & Webster. Negotiations looking to an amicable solution of this controversy were inaugurated, in the course of which Mr. Webster, representing Mrs. Gans, and her alone, and attorneys representing other contesting parties, expressed interest in the rights of their respective clients under former wills of the testator. Counsel for the corporate executor volunteered to procure copies of them from the attorney for the proponent in whose possession they were. According to his affidavit, the statements of which in this regard are not controverted, " they said all they wanted would be summaries showing how their particular clients had fared under prior wills. * * * At no time did any of the attorneys ask for any further information or express any interest in the rights of any persons who might have been mentioned in the prior wills other than the contestants for whom they were actually appearing in the matter."

He accordingly procured copies of the wills of 1920 and 1918, and prepared summaries from which he " left out a number of clauses that seemed to be obsolete or immaterial with respect to the information which the parties at the conference * * * had asked for. * * * The summaries and the information they contained were intended for the lawyers to whom they were given and the clients for whom they appeared and for no one else."

An excerpt from the summary thus sent to Mrs. Gans' attorney, with its immediate context, reads as follows:

" Gives Fifteen thousand dollars ($15,000) to executors in trust for Moses Hirshfeld, and after his death for his brother Jonah, remainder to the Foundation.

" The residue is then directed to be held in trust during the life time of his wife.

"After the wife's death 24/64ths of the residue are to be held in trust for Louisa Rice, with remainder to the Foundation.

"A like amount for Sarah Gans, with remainder to the foundation.

" 13/64ths for Hart Hirshfeld, with remainder to the foundation."

The petitioner states that her mother informed her " of the receipt by her attorney of the summary giving her this interest " and " that according to that summary " neither she nor her brother, George Gans, received any interest under the 1920 will. She

further asserts that in reliance thereon, she did not " become a party to the will contest which was then pending."

Some doubt is cast on the accuracy of these statements by reason of the fact that George Gans, petitioner's brother, as a named executor and coproponent, admittedly had access to all the papers in the case, which included the full copies of the wills, and actually went over them, although he makes the somewhat incredible assertion that he never actually read the 1920 will.

In any event, the contest was settled by negotiation and the increase of benefits of the contestants, and the will admitted to probate.

The legal question thereupon arises as to whether or not fraud on the petitioner is established by this recital, granting that her statements and those of her brother are taken as representing the full truth.

It has been authoritatively stated (*Delaney* v. *Valentine*, 154 N. Y. 692, 704) that " there can be no fraud in law or in fact without a breach of some legal or equitable duty," and in further development of the same thought, it is unquestionably established that " a representation even though knowingly false does not constitute ground for an action of deceit unless made with the intent to be communicated to the person or class of persons who act upon it to their prejudice " ( *Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 187; *Eaton, Cole & Burnham Co.* v. *Avery*, 83 id. 31, 34; *Brackett* v. *Griswold*, 112 id. 454, 471; *Abel* v. *Paterno*, 245 App. Div. 285, 290; *Van Swall* v. *Derschug*, 235 id. 387), " the relationship of the parties * * * must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care." (*International Products Co.* v. *Erie R. R. Co.*, 244 N. Y. 331, 338; *Jaillet* v. *Cashman*, 235 id. 511.) (See, also, *Courteen Seed Co.* v. *Hong Kong & Shanghai Banking Corp.*, 245 id. 377, 381.)

In the case at bar there is present no intimation or logical inference of any relationship whatsoever between the petitioner and the one preparing the requested summary, nor is there any intimation or inference that the latter prepared it with the belief or expectation of action by the petitioner in reliance thereon. The contrary is expressly averred and is reasonable on its face. Mrs. Gans and her attorneys, who never purported to or in fact did, represent or act for the petitioner, furnished a double insulation between them. Intent to mislead is completely negatived. Justifiable reliance is wholly absent.

With the removal of this support, the petitioner is in a position in all respects identical with that of any other applicant who seeks

relief under the authorization contained in subdivision 6 of section 20 of the Surrogate's Court Act from the effect of a duly entered decree.

It has long been the established rule of all courts that before such an application will be granted, a demonstration is prerequisite " that it would *probably* change the result if a new trial was granted." (*People* v. *Priori*, 164 N. Y. 459, 472.)   (Italics not in original.)

Unquestionably the most frequently cited modern statement on the subject is found in *Matter of Leslie* (175 App. Div. 108, 112), where Mr. Justice Scott, writing for the unanimous court, observes: " It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. He must first show with some degree of *probability* that his claim is well founded and that, if afforded an opportunity, he will be able to substantiate it."   (Italics not in original.)

This basic principle has been reiterated in substantially every subsequent adjudication on the subject. (See *Matter of Leslie*, 195 App. Div. 571, 575; *Matter of Elias*, 222 id. 728; *Matter of Jackson*, 134 Misc. 750, 752; affd., 227 App. Div. 777; *Matter of Lindsay*, 136 Misc. 555, 557; affd., 234 App. Div. 841; *Matter of Kalmowitz*, 134 Misc. 508, 510; *Matter of Pierson*, 144 id. 851, 852; *Matter of Bray*, 146 id. 415, 416; *Matter of Jones*, 147 id. 898, 899; *Matter of Eisenlohr*, 153 id. 130, 131; *Matter of Madden*, 155 id. 308, 309, 310.)

An ordinary lexicographical definition, it is obvious that the Court of Appeals and the Appellate Division, in the quoted excerpts, had the same rule in mind, since the word " probably," used by the Court of Appeals is defined by the Standard Dictionary as meaning: " In all probability; so far as the evidence shows; presumably; likely."   The same authority defines " probability " as " the state of being probable; the character of an event as more likely to happen or have happened than not to happen or have happened.   *   *   * The ground of expectation that is recognized when the greater weight of evidence favors or is taken to favor an event or sup-position."   Finally, " probable " connotes " being so supported by evidence as to incline the mind to belief rather than disbelief, yet leaving room for doubt."

An application of these definitions to the language employed by the appellate courts  demonstrates that an essential condition precedent to the granting of an application to vacate a decree and permit a litigation of the issues determined thereby, is a demonstration by the applicant that " so far as the evidence shows," " the greater weight of evidence favors " a belief that were the application

to be granted, a change in the result would eventuate. A mere possibility or conjecture is insufficient, the weight of evidence must point to such a result.

Obviously, in any evaluation of the potentialities present in such a situation, the showing both pro and con must be considered, since both would be the subject of comparative evaluation were the issue again to be submitted for determination.

In the present case the decedent was a man who had achieved considerable wealth and business success. That he possessed certain eccentricities appears to be a reasonable conclusion from the record as a whole. That these impaired his business abilities is amply negatived by the demonstration of the respondents on this application. He was the founder, president and majority stockholder of the American Rattan and Reed Manufacturing Company and active y managed and directed its business up to the time of his death. Its net business in 1923 was in excess of $640,000 and its net profit over $163,000. He personally arranged all of the company finances up to the time of his death, and those with whom he dealt in this connection found him capable, shrewd and intelligent, with no alteration in his mentality up to the time of his death.

He personally managed his individual estate of approximately $2,000,000 and conducted an apartment house of which he was the owner, negotiating leases, purchasing supplies, etc. The affidavits of his broker, of the assistant manager of the branch of the Corn Exchange Bank in which he kept his personal account, and of a vice-president of the Farmers Loan and Trust Company, where he kept a custod:al account, testify to intimate acquaintance with him and to conviction of his absolute soundness of mind, not only prior to and at the time of the execution of the will, but for the period subsequent thereto which terminated with his death.

That he was frugal to the point of parsimony and that he thought well of his importance and general standing in the community appears obvious, but that these characteristics in any wise affected his testamentary capacity appears to be an inadmissible inference. True, he wrote letters giving his views on matters of public interest to two Presidents of the United States and to other public personages. An impartial reading of copies of these letters, however, indicates rather a shrewd and thoughtful mind than one lacking in mental capacity.

As against this background, the petitioner presents affidavits or statements from six persons. That of Dr. Howes, in so far as it transcends the admitted fact of the parsimonious habits of the decedent is equivocally worded and is rather completely discredited

by his statement made prior to the probate. A former superintendent of an apartment owned by the decedent, while reaching a stated conclusion of unsoundness of mind, cites nothing but parsimonious acts and allegedly unfounded reprimands as the basis for his asserted opinion An affidavit of a superintendent of an orphan asylum is extremely vague as to particulars and cites as an outstanding indication of irrationality, a plan to inaugurate a national band contest for prizes to be offered by the decedent, apparently unaware that similar competitions have since been successfully conducted. The two other affidavits demonstrate nothing except parsimony and talkativeness. All that remains is a purported unverified and unsigned statement of a retired policeman who admits to resentment respecting complaints made by the decedent to the police commissioner, apparently respecting the noise of the police car driven by him.

Placing these opposing demonstrations on the opposite sides of the scale, it is apparent that " the greater weight of evidence " favors a reaffirmation of the present result were the question of testamentary capacity to be opened for redetermination. Nothing whatsoever has been shown on the part of the petitioner to indicate that at the time of the execution of the probated instrument, the testator did not have " sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should, or might have been the objects of his bounty, and the scope and bearing of the provisions of his will " or that he did not " have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them." This is the time-honored criterion of testamentary capacity (*Delafield* v. *Parish*, 25 N. Y. 9, 29), which is as firmly established today as at the time of its enunciation. (*Matter of Meade*, 200 App. Div. 346, 350; affd., 235 N. Y. 508; *Matter of Heaton*, 224 id. 22, 29, 30; *Dobie* v. *Armstrong*, 160 id. 584, 594; *Matter of Seagrist*, 1 App. Div. 615, 620; affd., 153 N. Y. 682; *Matter of Wolf*, 196 App. Div. 722, 727, 728.)

Under the doctrine of *People* v. *Priori, Matter of Leslie* and the other authorities hereinbefore considered the burden rests upon the petitioner to demonstrate the probability of her success were her prayer to be granted. She has not only failed in this regard but the probability is to the contrary.

In this situation, the court concurs in the terse statement of Surrogate DELEHANTY (*Matter of Jones*, 155 Misc. 49, 52): " The court is not willing to establish a precedent that its processes may

be used to establish merely a nuisance status which will permit a litigant to put his wares upon the counter and ask to be paid a price for taking them out of the market. The showing of merits here made by petitioner does not suffice to invoke the power of the court to open its decree."

The application is accordingly denied, with costs.

Enter decree on notice in conformity herewith.