[Cite as *Duck v. Cantoni*, 2013-Ohio-351.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

JONATHAN DUCK, IND. & AS ADMIN., :
  E/O ISAAC THOMAS DUCK,
  DECEASED,     :

  Plaintiff-Appellant,    :  Case No. 11CA20

  vs.        :

JAMES DENNIS CANTONI,   : DECISION AND JUDGMENT ENTRY
  M.D., et al.,
          :

  Defendants-Appellees.

_____

APPEARANCES:

COUNSEL FOR APPELLANT:  Kenneth S. Blumenthal and Jonathan R. Stoudt, Rourke &
            Blumenthal, LLP, 495 South High Street, Suite 450,
            Columbus, Ohio 43215

COUNSEL FOR APPELLEE   Frederick A. Sewards and Scott E.
JAMES D. CANTONI, M.D.: Williams, Hammond Sewards & Williams,
  556 East Town Street,           Columbus, Ohio 43215

COUNSEL FOR APPELLEE   Jason P. Ferrante, Sutter O'Connell, Co., MARIETTA
MEMORIAL   3600 Erieview Tower, 1301 East 9th HOSPITAL:    Street,
Cleveland, Ohio 44114

_____

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 1-29-13
ABELE, J.

{¶ 1} This is an appeal from a Washington County Common Pleas Court summary

judgment in favor of James Dennis Cantoni and Marietta Memorial Hospital, defendants below

and appellees herein.

{¶ 2} Jonathan Duck, Individually and as Administrator of the Estate of Isaac Thomas

Duck, plaintiff below and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN GRANTING THE CIV.R. 56
MOTIONS FOR SUMMARY JUDGMENT MADE BY
DEFENDANTS-APPELLEES JAMES DENNIS CANTONI, M.D.
AND MARIETTA MEMORIAL HOSPITAL."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN GRANTING THE MOTIONS
TO STRIKE THE AFFIDAVIT OF CAROLYN CRAWFORD,
M.D., MADE ON BEHALF OF DEFENDANTS-APPELLEES."

{¶ 3} Appellant instituted this wrongful death/medical malpractice action following the September 9, 2006 death of his newborn son, Isaac Duck. On September 8, 2006, Isaac was born via an emergency cesarean section. At the time of delivery, Isaac did not have a heart rate and had Apgar scores of 0, which indicated that Isaac did not have a pulse, lacked muscle tone, was not breathing, and failed to respond to stimulation.

{¶ 4} Dr. James D. Cantoni initiated resuscitation efforts and attempted to intubate Isaac.[1] During the first two attempts to intubate, Dr. Cantoni stated that the dim laryngoscope light rendered him unable to see so as to be able to intubate Isaac. Approximately seven to eight minutes after delivery, Dr. Cantoni obtained a laryngoscope with sufficient lighting and was able to intubate Isaac. Isaac then was placed on ventilation and transferred to Nationwide Children's Hospital. Upon examination, doctors determined that Isaac had only brain stem function, without

_____

[1] In presenting the facts, both parties relied upon Dr. Cantoni's deposition. His deposition, however, was not filed in the case. Appellant attached a copy of Dr. Cantoni's deposition to his appellate brief. Appellees did not object. Thus, we obtained some background facts from Dr. Cantoni's deposition.

any spontaneous activity. Isaac's parents subsequently decided to withdraw life support, and sadly, Isaac died the day after his birth.

{¶ 5} Appellant later instituted a wrongful death claim. Both appellees filed separate summary judgment motions and argued that appellant could not establish proximate cause and, consequently, could not maintain his action. To support their arguments, appellees relied upon appellant's experts' testimony that Isaac would have had a fifty percent chance of survival if he had been intubated immediately after his birth.

{¶ 6} One of appellant's experts, Dr. Kevin Bove,[2] opined that Isaac "would have had definitely an increased chance to survive" if he had been intubated immediately after birth. Dr. Bove further stated that the approximately eight to nine minute delay in intubating Isaac "made a difference in what this outcome would be." When pressed to state "how much of a difference," Dr. Bove explained:

> "Well, it's difficult to say because there are a number of different outcomes that are possible here during the immediate neonatal period; alive with brain injury of varying degrees of severity, and least of all, I think, would be alive with no brain injury whatsoever.
> So I'm in the middle there somewhere. I think it's–that the middle two of those is a very real possibility."

{¶ 7} When asked to express his opinion in a percentage, Dr. Bove stated: "It's hard to come up with a percentage. I just use the sort of lay term fifty/fifty. I think he had a chance of surviving within that range, but probably not without brain injury."

{¶ 8} Dr. Carolyn S. Crawford, appellant's other expert, testified similarly. Dr.

---

[2] On April 29, 2011, Dr. Cantoni filed a notice of filing Dr. Bove's and Dr. Carolyn Crawford's depositions. However, those depositions are not included in the record submitted on appeal. Appellant attached copies of the depositions to his appellate brief and appellees did not object. Thus, we reviewed the copies attached to appellant's brief.

Cantoni's counsel asked whether she agreed with Dr. Bove that Isaac "had a 50/50 chance of survival if intubated immediately at birth." She stated that she agreed "because the heart rate would have come up." Cantoni's counsel continued:

> "Q. And so you—okay, so your opinion is that Baby Duck had a 50 percent chance of survival if intubated immediately upon delivery?
> A. Yes."

{¶ 9} Dr. Crawford offered further testimony regarding Isaac's chance of survival following intubation. She opined that "somewhere around 15, 16 minutes" after birth Isaac "had an Apgar score of 3, and if the score is less than 3 * * * at 15 minutes, the mortality rate has been reported to be 53 percent. So, his around 15 minutes was probably a 3 because he—or maybe a minute later, he was right on that borderline, so I think he had probably a mortality risk around 50 percent." She also believed that at twenty minutes, he had an Apgar score of 4 and that "he had at least a 50/50 chance."

{¶ 10} In their summary judgment motions, appellees argued that appellant's experts' testimony failed to establish that any negligent failure to intubate Issac proximately caused Isaac's death. Appellees observed that (1) both of appellant's experts testified that if Isaac had been intubated immediately after his birth, he would have had a fifty percent chance of survival, and (2) neither expert stated that Isaac would have had a fifty-one percent or greater chance of survival had he been intubated immediately. Appellees thus asserted that because neither expert could state that Isaac had a fifty-one percent or greater chance of survival, appellant could not establish that appellees' alleged negligence more likely than not caused Isaac's death. Appellees additionally contended that the loss of chance doctrine could not save appellant's case. They asserted that the doctrine does not apply when a patient, like Isaac, has an even chance of survival.

{¶ 11} In opposition, appellant's presented an affidavit that Dr. Crawford prepared. In it, she stated that "had [appellees] acted in accordance with the standard of care, Isaac would have avoided approximately eight to nine minutes of asphyxia and would have had an increased chance of survival." She further stated:

> "Isaac's chances of survival at that time were slightly less than even. During my February 16, 2010 deposition in this matter, I stated that I agreed chances of survival were fifty percent. In answering this question, I agreed with the general sentiment that Isaac's chances of survival at that point were close to even, but meant to convey only that I could not state that he probably would have survived, i.e.[,] that his odds were more-likely-than-not. However, my opinion is that Isaac's odds of survival did not meet this threshold and were rather slightly less-likely-than-not at that time."

{¶ 12} She additionally opined:

> "Isaac had an Apgar score of 2 at fifteen minutes post-delivery, suggestive of a fifty-three percent mortality rate. As such, in terms of a specific percentage, it is my opinion that Isaac's odds of survival at the time of the Defendants' negligence was forty-seven percent. These risks were greatly increased by the negligence of the Defendants in this matter, leading to Isaac's eventual death * * *."

{¶ 13} In his opposition memorandum, appellant asserted that Dr. Crawford's affidavit, opining that Isaac had a forty-seven percent chance of survival, created a genuine issue of material fact regarding the loss of chance doctrine. Appellant also argued that Dr. Bove's testimony that Isaac's chance of survival "within [the fifty/fifty] range" showed that a genuine issue of material fact remained regarding whether Isaac's survival was less than probable if he had been intubated immediately.

{¶ 14} Appellees filed motions to strike Dr. Crawford's affidavit and argued that the affidavit that Isaac's chance of survival was forty-seven percent conflicted with her deposition testimony, where she agreed that Isaac's chance of survival was fifty percent.

{¶ 15} On July 11, 2011, the trial court granted appellees' motions to strike Dr. Crawford's affidavit and entered summary judgment in their favor.   This appeal followed.

I

{¶ 16} In his first assignment of error, appellant argues that the trial court improperly entered summary judgment in appellees' favor.   Appellant contends that genuine issues of material fact remain as to whether appellees violated the standard of care and whether that violation increased Isaac's risk of harm.   Appellant asserted that his experts' testimony placing Isaac's chance of survival "within [the fifty/fifty] range" and "around 50 percent" could allow a reasonable jury to conclude that Isaac's chances were "somewhat less than probable."   Appellant further disputes appellees' claim that the loss of chance doctrine does not apply when a patient has a fifty percent chance of survival.   Appellant argues that the Ohio Supreme Court did not intend to create a gap between the loss of chance and proximate cause theories for the fifty-fifty chance of survival plaintiff.

{¶ 17} Appellees argue that the loss of chance doctrine only applies when a plaintiff already has a less-than-even (i.e., less than fifty-fifty) chance of recovery or survival, which chance is then further diminished by defendant.   Appellees claim that the loss of chance doctrine set forth in Roberts does not apply when the injured person has an even or greater-than-even chance of recovery or survival.

A

SUMMARY JUDGMENT STANDARD

{¶ 18} Appellate courts conduct a de novo review of trial court summary judgment

decisions.   E.g., Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

Accordingly, an appellate court must independently review the record to determine if summary

judgment is appropriate and need not defer to the trial court's decision.   E.g., Brown v. Scioto Bd.

of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio

App.3d 409, 411–12, 599 N.E.2d 786 (1991).   To determine whether a trial court properly granted

a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment

standard, as well as the applicable law.   Civ. R. 56(C) provides in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, written admissions, affidavits, transcripts of
> evidence in the pending case, and written stipulations of fact, if any, timely filed in
> the action, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.   No evidence or stipulation
> may be considered except as stated in this rule.   A summary judgment shall not be
> rendered unless it appears from the evidence or stipulation, and only from the
> evidence or stipulation, that reasonable minds can come to but one conclusion and
> that conclusion is adverse to the party against whom the motion for summary
> judgment is made, that party being entitled to have the evidence or stipulation
> construed most strongly in the party's favor.

{¶ 19}  Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless

the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come

to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving

party, that conclusion is adverse to the party against whom the motion for summary judgment is

made.  E.g., Vahila v. Hall, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

B

LOSS OF CHANCE DOCTRINE

{¶ 20}  A medical malpractice plaintiff ordinarily must present expert testimony to show

that a defendant's negligent conduct more likely than not caused the plaintiff's injury.   Roberts v.

Ohio Permamente Medical Group, Inc., 76 Ohio St.3d 483, 485, 668 N.E.2d 480 (1996).   The loss

of chance doctrine, however, provides an exception to the general rule regarding proximate cause.

Id.   The Ohio Supreme Court adopted the loss of chance doctrine in Roberts.   In that case, the

plaintiff filed a wrongful death claim against various medical providers who allegedly negligently

failed to properly diagnose the decedent's lung cancer.   During the trial court proceedings, the

parties stipulated that the decedent would have had a twenty-eight percent chance of survival if the

defendants had rendered proper and timely care.   The defendants asserted that they were entitled to

summary judgment because the plaintiff did not show a probability that the defendants' negligence

proximately caused the decedent's death.   The plaintiff asserted that a genuine issue of material

fact remained under the loss of chance doctrine.   The trial court awarded summary judgment in the

defendants' favor, and the appellate court affirmed.

{¶ 21} On appeal, the Supreme Court framed the issue as "whether Ohio should recognize

a claim for loss of chance in a wrongful death action where the decedent had a less than

fifty-percent chance of survival."   Id. at 485.   The court answered in the affirmative and held:

> "In order to maintain an action for the loss of a less-than-even chance of
>
> recovery or survival, the plaintiff must present expert medical testimony showing
>
> that the health care provider's negligent act or omission increased the risk of harm
>
> to the plaintiff.   It then becomes a jury question as to whether the defendant's
>
> negligence was a cause of the plaintiff's injury or death."

Id. at paragraph one of the syllabus (emphasis added).   Under the language set forth in paragraph

one of the syllabus, the doctrine applies when a plaintiff has a "less-than-even chance of recovery

or survival." The syllabus language leaves no wiggle room for plaintiffs who have an even chance of survival.

{¶ 22} In the case at bar, appellant's evidence does not show, and does not create a genuine issue of material fact, that Isaac had a less-than-even chance of survival. Because the evidence fails to show that Isaac had a less-than-even chance of survival, the Roberts loss of chance doctrine does not apply to this case. Moreover, appellant has conceded that he is unable to prove the traditional theory of proximate cause, i.e., that appellees' allegedly negligent conduct more likely than not caused Isaac's death. Thus, appellant can prove no set of facts that would entitle him to recover for Isaac's tragically traumatic death.

{¶ 23} Appellant argues that the loss of chance doctrine was not intended to create a gap for those who cannot show that a patient had a less-than-even chance of survival and who cannot show that the defendant's negligent conduct more likely than not caused the patient's injury. Basically, he contends that the loss of chance doctrine was not intended to create a legal dead zone for a patient with a fifty-fifty chance of survival. Appellant asserts that inherent unfairness results to the fifty-fifty chance of survival plaintiff because the plaintiff who has a forty-nine or a fifty-one percent chance of survival can recover under the loss-of-chance doctrine or traditional proximate cause theory, respectively, but the fifty-fifty chance of survival plaintiff has no option that permits recovery. To support his argument, appellant points to language where the Roberts court described the chance of survival as "less than probable" and "not better than even." Id. at 485 and 487. He asserts that this language permits the fifty-fifty chance of survival plaintiff to use the loss-of-chance doctrine because "[f]ifty-fifty chances of survival are not 'better than even' and are, in fact, slightly 'less than probable.'"

{¶ 24} We believe, however, that the court clearly set forth its holding both in the syllabus and later in the opinion.[3] Id. at paragraph one of the syllabus and 488. Both instances define the doctrine as the "loss of a less-than-even chance" of survival. We believe that if the court had intended the doctrine to encompass the fifty-fifty chance of survival plaintiff, then it would not have described the doctrine as compensating the "loss of a less-than-even chance" of survival. Although we undoubtedly sympathize with appellant's loss, we do not think that the Roberts opinion, as it currently stands, permits plaintiffs with an even chance of recovery to be included in the loss of chance doctrine. McDermott v. Tweel, 151 Ohio App.3d 763, 2003–Ohio–885, 786 N.E.2d 67, ¶43 (10th Dist.) (stating that "the case law does not presently allow for the application of the loss-of-chance doctrine to a case * * * in which the injured patient had an even * * * chance of recovery at the time of the alleged medical negligence"); accord McNeilan v. The Ohio State Univ. Med. Ctr., 10th Dist. No. 10AP-472, 2011-Ohio-678, 2011 WL 531616, ¶63.

{¶ 25} We recognize that the language in Roberts may not accurately reflect the Roberts court's true intention, however. Thus, we encourage appellants to seek further review of this issue so that the Ohio Supreme Court may definitively answer whether the language it used in the Roberts opinion intended to convey that the loss of chance doctrine applies to plaintiffs with an even chance of survival. Perhaps the language appellant cites is nothing more than obiter dictum.

---

[3] The Rules for the Reporting of Opinions previously provided that the law was stated in the syllabus. Former Rep.Op.R. 1(B) stated: "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Before the July 2012 adoption of the new Rules for the Reporting of Opinions, if any conflicts existed between the syllabus and a statement in a supreme court opinion, then the syllabus controlled. Akers v. Serv—A—Portion, Inc., 31 Ohio St.3d 78, 79, 508 N.E.2d 964, fn. 1 (1987).

The current rules, however, differ. Under the new rules, "[t]he law stated in an opinion of the Supreme Court shall be contained in its text, including its syllabus, if one is provided, and footnotes." Rep.Op.R. 2.2. The new rules provide no explanation for resolving any conflicts that may exist among those three elements, and it is not clear whether the rule set forth in Akers still applies.

State ex rel Gordon v. Barthalow, 150 Ohio St. 499, 505–506, 83 N.E.2d 393 (1948), quoting

Webster's New International Dictionary (2d Ed.) (defining "obiter dictum" as "'an incidental and

collateral opinion uttered by a judge, and therefore [as not material to his decision or judgment] not

binding * * * Hence, any incidental remark, reflection, comment, or the like'").

{¶ 26} Appellant also argues that his experts' opinions that Isaac's chance of survival was

"around" fifty percent or "within that range" is sufficient to create a genuine issue of material fact

regarding whether his chance of survival was less than fifty percent.   He argues, in essence, that

because his experts could not pinpoint the precise percentage, their language suggests that Isaac's

chance of survival could have been slightly less than fifty percent.   To support his contention,

appellant relies upon part of a passage from Cooper v. Sisters of Charity of Cincinnati, Inc., 27

Ohio St.2d 242, 272 N.E.2d 97 (1971), where, according to appellant's brief, the court stated:

> "Dr. Dejong's opinion that, with surgical intervention, decedent's expectation of
> survival was 'Maybe ... around 50%,' in our judgment does not provide a basis from
> which probability can reasonably be inferred. . . . A juror could reasonably infer
> from Dr. Dejong's testimony that survival would, under the circumstances, have
> been somewhat less than probable."

Appellant thus contends that this passage means that if an expert opines that the decedent's chance

of survival was "around 50%," then a juror could reasonably infer that survival was less than

probable, in which case, the loss of chance doctrine must be submitted to a jury.   We do not agree.

{¶ 27} The entire passage reads:

> "Probability is most often defined as that which is more likely than not.   See
> Clark v. Welch (C.C.A. 1, 1944), 140 F.2d 271, 273; In re Salomon's Estate (1936),
> 159 Misc. 379, 384, 287 N.Y.S. 814.   Dr. DeJong's opinion that, with surgical
> intervention, decedent's expectation of survival was 'Maybe * * * around 50%,' in
> our judgment does not provide a basis from which probability can reasonably be
> inferred.   The use of the words, 'maybe' and 'around,' does not connote that there
> is probability; those words, in the context used, could mean either more than 50%,

or less than 50%.  Probable is more than 50% of actual.  Price v. Neyland (1963), 115 U.S.App.D.C. 355, 320 F.2d 674, 678.  In view of the requirement that proximate cause, in this type of case, is a matter demanding medical expert testimony, there are no facts available in this case from which a juror could infer that survival would have been more likely, than not, if surgery had been performed. A juror could as reasonably infer from Dr. DeJong's testimony that survival would, under the circumstances, have been somewhat less than probable.

As stated in Davis v. Guarnieri (1887), 45 Ohio St. 470, 490, 15 N.E. 350, 361, 'It is legally and logically impossible for it to be probable that a fact exists, and at the same time probable that it does not exist.'"

Id. at 253.

{¶ 28} We do not believe that the Cooper court intended this language to mean that if an expert testifies that a chance of survival was "around" fifty percent, then the jury must have the opportunity to decide whether the chance of survival was more than probable or less than probable, and consequently, whether traditional proximate cause principles apply or whether the loss of a less-than-even chance doctrine applies.  The Cooper court noted that the words "maybe" and "around" could mean more than probable or less than probable and, thus, are insufficient to demonstrate probability in a medical malpractice case.  As applied in the loss of chance context, the words "maybe" and "around" also could mean more than probable or less than probable.  If, in the words of the Cooper court, the words "'maybe' and 'around' [fifty percent] * * * do[] not provide a basis from which probability can reasonably be inferred," then we likewise think that the phrases "around 50%" or "within that range" do not provide a basis from which a juror reasonably could infer that survival was less than even.  If an expert cannot determine the chance of survival, we fail to see how a reasonable juror could determine the chance of survival.  Consequently, we do not believe that the trial court improperly entered summary judgment in appellees' favor.

{¶ 29} Accordingly, based upon the foregoing reasons, we overrule appellant's first

assignment of error.

II

**{¶ 30}** In his second assignment of error, appellant argues that the trial court erred by striking Dr. Crawford's affidavit.   Appellant contends that Dr. Crawford's affidavit did not contradict her prior deposition testimony, but instead, clarified it.

**{¶ 31}** We review a trial court's ruling regarding a motion to strike an affidavit, like all evidentiary rulings, for an abuse of discretion.   E.g., Curren v. Greenfield, 4th Dist. No. 11CA30, 2012-Ohio-4688, 2012 WL 4789844, ¶8; Siegel v. LifeCenter Organ Donor Network, 2011-Ohio-6031, 969 N.E.2d 1271, ¶43 (1st Dist.).   An "abuse of discretion" constitutes more than an error of law or of judgment.   Rather, it implies that the court acted in an unreasonable, arbitrary, or unconscionable manner.   E.g., State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).   Moreover, when applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for the trial court's.   E.g., Berk v. Matthews, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

**{¶ 32}** A trial court may strike a retained, nonparty expert's affidavit submitted in opposition to a summary judgment motion when the affidavit contradicts that expert's prior deposition testimony and when the expert fails to sufficiently explain the reason for the contradiction.   Pettiford v. Aggarwal, 126 Ohio St.3d 413, 2010-Ohio-3237, 934 N.E.2d 913 (2010), paragraph one of the syllabus ("An affidavit of a retained, nonparty expert contradicting the former deposition testimony of that expert and submitted in opposition to a pending motion for summary judgment does not create a genuine issue of material fact to prevent summary judgment unless the expert sufficiently explains the reason for the contradiction.").   Whether an expert's

affidavit conflicts with prior deposition testimony without adequate explanation is a question of fact for the trial court to resolve.   Pettiford at ¶40.

{¶ 33} In the case at bar, we do not believe that the trial court's decision to strike Dr. Crawford's affidavit constitutes an "abuse" of discretion.   During her deposition, Dr. Crawford agreed with the statement that Isaac's chance of survival was fifty percent.   In her affidavit, however, she changed her position and opined that she actually believed that Isaac's chance of survival was slightly less than probable.   While Dr. Crawford attempted to explain the difference between her deposition and affidavit, the trial court obviously found her explanation insufficient. Dr. Crawford attempted to explain that her differing opinion was not a contradiction, but merely a further explanation of what she meant by "fifty percent."   It appears quite obvious, however, that Dr. Crawford backpedaled from her prior deposition testimony where she agreed that Isaac's chance of survival was fifty percent.   Had she meant less than fifty percent when she offered her deposition testimony, i.e., slightly less than probable, she could have so stated.   Instead, she explicitly agreed that Isaac "had a 50 percent chance of survival if intubated immediately upon delivery."

{¶ 34} Moreover, Dr. Crawford's reference to forty-seven percent does not establish that Isaac's chance of survival was less than even had he been intubated immediately.   Instead, what she stated in her affidavit is that Isaac had an Apgar score of 2 at fifteen minutes following his birth, which indicated that his chance of survival was forty-seven percent.   Fifteen minutes following Isaac's birth is seven to nine minutes after the alleged negligence occurred.   For the loss of a less-than-even chance doctrine to apply, the chance must be less-than-even before the negligence occurs, not after.   Dr. Crawford stated that Isaac's odds of survival were forty-seven

percent after he had been intubated–and thus after the alleged negligence. She did not state that Isaac had a forty-seven percent chance of survival if he been intubated immediately after his birth. She did not state that Isaac had a forty-seven percent chance of survival before negligence and that appellees then engaged in negligence that reduced those chances. Instead, her statement that Isaac had a forty-seven percent chance of survival is based upon Isaac's Apgar score of 2 at fifteen minutes following delivery. The loss of a less-than-even chance doctrine applies if the alleged negligence caused the plaintiff to lose a forty-nine percent or less chance of survival. Dr. Crawford's affidavit places Isaac's chance of survival at forty-seven percent fifteen minutes after his birth, not at the point just prior to the allegedly negligent act. Thus, Dr. Crawford's affidavit does not show that appellees' alleged negligence deprived Isaac of a forty-seven percent chance of survival. Instead, her affidavit claims that after appellees' alleged negligence already occurred, Isaac had a forty-seven percent chance of survival. Thus, because Dr. Crawford did not offer a sufficiently logical explanation for the contradiction between her affidavit and her deposition, the trial court did not abuse its discretion by striking her affidavit.

{¶ 35} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

Harsha, J., Dissenting.

{¶ 36} The majority interprets *Roberts* as defining the loss of chance theory as the "loss of a less-than-even chance" of survival. However, the *Roberts* Court never defined this theory in mathematical terms. Instead, the Court described loss of chance as a theory "which compensates an injured plaintiff for his or her diminished chance of recovery or survival." *Roberts* at 485. The Court framed the issue before it as "whether Ohio should recognize a claim for loss of chance in a wrongful death action where the decedent had a less than fifty-percent chance of survival. " *Id.* Because the parties in *Roberts* stipulated that the decedent had a twenty-eight percent chance of survival, the Court had no occasion to address the issue before us, which is whether to permit a claim for loss of chance where the decedent had a fifty-percent, i.e., an even chance, of survival. Therefore, I conclude that neither the first syllabus nor the bolding in Roberts are controlling because they are based upon and reflect the fact that the decedent there had a twenty eight percent chance of survival, i.e. a less-than-even-chance.

{¶ 37} However, I believe the rationale behind the decision in *Roberts* supports the conclusion that we should permit loss of chance claims where the decedent had a fifty-percent chance of survival. In permitting loss of chance claims where the decedent had a less than fifty-percent chance of survival, the *Roberts* court focused on the fact that "a health care provider should not be insulated from liability where there is expert medical testimony showing that he or she reduced the patient's chances of survival." *Id. at 488.* Otherwise, "the innocent patient is the loser while the health care provider escapes liability despite his or her negligence." *Id.*

{¶ 38} Like a decedent who had a forty-nine-percent chance of recovery, a decedent who

had a fifty-percent chance of recovery ordinarily cannot recover on a medical malpractice claim because he cannot establish proximate cause, i.e., that the defendant's negligent conduct more likely than not caused the injury.   If we do not permit loss of chance claims for decedents with a fifty-percent chance of survival, health care providers who negligently diminished that chance will be insulated from liability, and the innocent patient will be the loser.   The patient with a fifty-percent chance of survival negligently reduced to zero would stand in a worse position than the patient with a forty-nine percent chance reduced to zero, even though the patient with a fifty-percent chance suffered a greater loss.   Such a result is inconsistent with justice and fundamental fairness.   Id.   Accordingly, I conclude the law permits claims for loss of chance where the decedent had a fifty-percent chance of survival.

{¶ 39}   As an aside, *Roberts* relied on Restatement of the Law 2d, *Torts* (1965), section 323 as providing the rationale for applying "the loss-of-chance theory."   Id at 486.   However, Restatement of the Law 3d, *Torts*:   Liability for Physical and Emotional Harm § 26, Factual cause, calls that reliance "misplaced."   See comment n. Lost opportunity or lost chance as harm.   The comment concludes § 323 deals with duty not causation, which according to the comment is the more appropriate focus.   The comment also provides support for allowing recovery under the fifty-percent survival scenario.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J.: Concurs in Judgment & Opinion
Harsha, J.: Dissents with Dissenting Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.